## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELISSA DEVIN MAGNESS, individually and on behalf of all others similarly situated<br><br><br>Plaintiff<br><br>v.<br><br>WALLED LAKE CREDIT BUREAU, LLC; BANK OF AMERICA, N.A.; and DOES 1 through 10, inclusive,<br><br><br><br>Defendants | Civil Action No.:<br><br><br>CLASS ACTION COMPLAINT<br><br><br><br><br>**JURY TRIAL DEMANDED** |

Melissa Devin Magness, ("Magness" or "Plaintiff"), on behalf of herself and all others similarly situated, alleges as follows:

### INTRODUCTION

1.      Plaintiff brings this  action for damages  pursuant to the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, the Pennsylvania Fair Credit Extension Uniformity Act (hereinafter "FCEUA"), 73 P.S. §§ 2270 *et seq.*; and the Unfair Trade Practices and Consumer Protection Law (hereinafter "UTPCPL"), 73 Pa.C.S. §§ 201.1 *et seq.*

### THE PARTIES

2.      Plaintiff is an adult individual who is a citizen of the Commonwealth of Pennsylvania.

3.      Plaintiff is a "consumer," as that term is defined and/or contemplated within the scope of FDCPA, FCEUA, and UTPCPL.

1

4.      Defendant, WALLED LAKE CREDIT BUREAU, LLC (hereinafter, individually, "WLCB"), is a limited liability company, organized in the State of Michigan, registered to do business in the Commonwealth of Pennsylvania, and engaged in the business of debt collection within the Commonwealth of Pennsylvania. Upon information and belief, WLCB's principal place of business is located at 2328 Ventura Dr. Walled Lake, MI 48390.

5.      Indeed, when registering to do business in the Commonwealth of Pennsylvania (as well as a multitude of other states), WLCB disclosed that the sole purpose of its formation, operation, and registration is debt collection.

6.      Defendant, BANK OF AMERICA, N.A. (hereinafter, individually, "BOA"), is a national bank, engaged in the business of debt collection, within the Commonwealth of Pennsylvania.  BOA is a subsidiary of Bank of America Corporation with its headquarters located in Charlotte, North Carolina.

7.      Plaintiff is unaware of the names and capacities of those defendants sued as DOES 1 through 10, but will seek leave to amend this complaint once their identities become known to Plaintiff.  Upon information and belief, Plaintiff alleges that at all relevant times each defendant, including the DOE defendants 1 through 10, was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other defendants, and in engaging in the conduct alleged herein was in the course and scope of and in furtherance of such relationship.

8.      Unless otherwise specified, Plaintiff will refer to all defendants collectively as "Defendants" and each allegation pertains to each Defendant.

9.      Defendants are "debt collectors" and/or "creditors," as those terms are defined and/or contemplated within the scope of FDCPA or FCEUA.

10.     Defendants regularly use an instrumentality of interstate commerce in a business of collection of debts in default and/or regularly collect or attempt to collect, directly or indirectly, debts owed or due (or asserted to be owed or due) another.

11.     At all times material hereto, Defendants acted and/or failed to act in person and/or through duly authorized agents, servants, workmen, and/or employees, acting within the scope and course of their authority and/or employment for and/or on behalf of Defendants.

## JURISDICTION AND VENUE

12.     This Honorable Court has jurisdiction pursuant to 15 U.S.C. § 1692k and 28 U.S.C. § 1331.

13.     In addition, this Court has supplemental jurisdiction under 28 U.S.C. §1367 over the Pennsylvania state law claims because those claims derive from a common nucleus of operative facts.

14.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

15.     The Eastern District of Pennsylvania is the proper venue for this litigation pursuant to 28 U.S.C. § 1391, as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and the Defendants are subject to personal jurisdiction in this district.

## FACTAL ALLEGATIONS

16.     In June of 2011, Plaintiff purchased a townhouse, located in the Northern Liberties section of Philadelphia.  Plaintiff bought this property to use as a personal residence.

17.     Upon information and belief the purchase was facilitated by a mortgage from BOA.

18.     Thereafter, as customary, Plaintiff began receiving regular "mortgage statements" from BOA that identified the necessary monthly payment due to BOA.

19.     At all times relevant hereto, after receiving her mortgage statements, Plaintiff made timely, up-to-date payments to BOA, in accordance with the mortgage statement.

20.     In addition to the monthly amounts due under the mortgage, Plaintiff also made regular, voluntary, and significant contributions towards the principal of the loan.

21.     In August of 2012, Plaintiff did not receive her regular mortgage statement. Plaintiff telephoned BOA to inquire about the statement and the status of her mortgage.

22.     A BOA representative informed Plaintiff that her account was current and that, although she did not receive a mortgage statement, she was still responsible for making her payment to BOA.  Plaintiff subsequently made a payment in the amount she was told to make by the BOA representative.

23.     Several days later, Plaintiff received a package, delivered by FedEx.  Thinking that the package was from BOA, Plaintiff accepted the package, because she was familiar with BOA's logos and insignia.  Indeed, the package specifically noted it contained "Important Information from Bank of America Home Loans."

24.     The package contained approximately twenty double-sided pages and appeared to have been sent by BOA, because of numerous BOA logos and insignia that were placed and prominently-displayed throughout the package.  A true and correct copy of this package is marked and attached hereto as Exhibit "A."

25.     Notably, the cover page directed to Plaintiff contained the following text:

>    **We have not received your last two regularly scheduled payments and are concerned that you may be having difficulty making your mortgage payment**.  We want to make sure you are aware of the solutions that may be available to you.  It is important

4

that **you take action on this issue quickly**, allowing your payments to become past due will put you at **risk of losing your home to foreclosure**. . . .

Exhibit "A." (Emphasis supplied).

26.     The cover letter referenced the set of documents received by Plaintiff as a "Borrower Response Package."  Attached hereto as Exhibit "A."

27.     The letter also contained the following language that emphasized its importance and urgency:

- "**We strongly encourage you to apply for assistance to avoid foreclosure**;"

- "**Please act quickly before your options become limited**;" and

- "It is important that you return your Borrower Response Package as soon as possible. . ."

Exhibit "A" (Emphasis supplied).

28.     The cover letter further provided that, if Plaintiff ignored this communication, Defendants threatened to institute foreclosure proceedings and she would lose her home.  *See* Exhibit "A."

29.     In a significantly smaller font, at the bottom of the page, the cover letter included a "P.S." which stated *inter alia*, "We may be able to limit future calls to **collect on your account**."  *Id*. (Emphasis supplied).

30.     The cover letter further disclosed that BOA is a "debt collector" and identified WLCB as a "licensed debt collector," a "third party company," "working with" BOA.  Exhibit "A."

31.     Thus, the following text appears at the bottom of the cover page:

>Federal law requires that we communicate to you that Bank of America, N.A. is a debt collector and also that Walled Lake Credit Bureau, LLC is a licensed debt collector.  However, the purpose of the communication is to let you know about your potential eligibility for a loan assistance program that may help you bring or keep your loan current through more affordable payments.  Please see the enclosed insert for important disclosures from Walled Lake Credit Bureau, LLC.

Exhibit "A."

32.    The cover letter contains confusing and misleading language which does not clearly disclose the purpose of the "Borrower Response Package." It states that BOA has not received at least two scheduled payments and that BOA may be able to limit "future calls to collect on your account."  It further discloses that BOA and WLCB are debt collectors, but in the same paragraph (in significantly smaller font) states the purpose of the communication is to "let you know about your potential eligibility for a loan assistance program that may help you bring or keep you loan current through more affordable payments."

33.    Further misleading Plaintiff however, the following text is buried on the last page of the "Borrower Response Package:"

>**Walled Lake Credit Bureau, LLC** is a debt collector.  Therefore, the following disclosures are required under various state and Federal law.  However, we would like to reassure you that we have been retained to assist Bank of America, N.A. with its efforts to reach its customers who may be eligible for a Home Affordable modification Program.  The true purpose of these letters are to obtain a more affordable payment for you.

>### IMPORTANT DISCLOSURES
>This communication is from a debt collector attempting to collect a debt.  Any information you provide **Walled Lake Credit Bureau, LLC** will be used for that purpose.  This communication and the phone number listed above are operated by **Walled Lake Credit Bureau, LLC, 11802 Ridge Parkway, Ste 100 HRM**

**Broomfield, CO 80021**[1]. . . .**Walled Lake Credit Bureau, LLC** is a third-party debt collection and home retention services company that has been duly authorized by Bank of America, N.A. to contact their borrowers and assist them with this program.

* * *

<u>NOTICE REGARDING DISPUTING YOUR DEBT</u>

Unless within 30 days of your receipt of this notice, you notify **Walled Lake Credit Bureau, LLC** in writing that you dispute the validity of this debt, it will be assumed to be correct.  If you notify **Walled Lake Credit Bureau, LLC** in writing within thirty days that you dispute the validity of the debt, or any portion of the debt, **Walled Lake Credit Bureau, LLC** will obtain and provide you, by mail, with verification of the debt or a copy of the judgment.  If you request it <u>in writing</u> within 30 days, **Walled Lake Credit Bureau**, LLC will provide you with the name and address of the original creditor (if different from the current creditor).

Exhibit "A."  (Highlighting, capitalization, and underlining original).

34.     The package also threatened that the delinquency status of Plaintiff's mortgage "will be reported to credit reporting agencies."  Exhibit "A."

35.     After receiving this package in September 2012, Plaintiff immediately called BOA to inquire about the status of her account.  During this phone call, for the first time, Plaintiff was told by a BOA representative that there was an issue with her escrow account balance and that she needed to submit additional funds to cover the balance.

36.     The issue surrounding Plaintiff's escrow balance stemmed from her changing home insurers.  At no time was Plaintiff delinquent in her mortgage payments, notwithstanding the inaccurate language in Defendants' cover letter.

37.     Plaintiff immediately paid the requested amount.  In response, Plaintiff was told that everything was now "OK" and that a note would be placed on her account that all further

---

[1] Upon and information and belief this is the address for the Home Retention Division of BOA – further confusing the recipient of the letter.

**collection activity** must cease.  Further, at no point in time did anyone indicate that Plaintiff had missed a mortgage payment.

38.     Two days later, Plaintiff began receiving phone calls from unknown individuals, claiming that she owes money to BOA.  The individuals identified themselves as both calling "from BOA" and also claiming to be "representing BOA."  During these phone calls to Plaintiff the callers became progressively more agitated and proceeded to yell and harass Plaintiff.

39.     Despite Plaintiff's demand that the collection calls cease, the unknown individuals continued calling, dialing her number repeatedly.

40.     Confused and frustrated, Plaintiff again called BOA to determine the status of her account.  During the course of this call, a representative of BOA stated that the account was "up to date" and without any default.  Plaintiff was further informed that there would be no more **collection activity** with regard to Plaintiff's account.

41.     Nonetheless, in the days following the conference call with the BOA representative, Plaintiff still continued to receive phone calls from multiple unknown individuals, who claimed to be calling from BOA or, in some instances, "representing" BOA.

42.     These individuals were seeking collection of a debt (namely, Plaintiff's mortgage) and/or offering loan modification services (for Plaintiff's mortgage).

43.     Plaintiff also received several emails referencing the above letter and indicating that it was an "urgent matter."  The emails only referenced BOA and appear to have been generated/authored by BOA.  Unfortunately for Plaintiff, the emails contained contact information that was different from that which was contained in the "Borrower Response Package."

44.     Plaintiff received at least two more identical "Borrower Response Packages,"

addressed to her mailing address and her father's address in Montgomery County, Pennsylvania. These packages were received after Plaintiff had spoken with BOA and was assured that all collection activity would cease.

45.     Further, the last package, which contained a cover letter dated September 5, 2012, was not mailed until September 21, 2012 (as evidenced by its envelope).  A true and correct copy of the envelope at issue is marked and attached hereto as Exhibit "B."

46.     The late mailing date, in relation to the date of the letter, further caused confusion and created a false sense of urgency, as the letter indicated that the package needed to be returned by October 5, 2012, a mere two weeks after Plaintiff received the package.

47.     All of the above correspondence and communications appear to have originated from BOA, as indicated by the use of its insignia.  However the correspondence was designed to confuse, deceive, and/or mislead Plaintiff and the members of the Classes (as defined herein) into believing that this correspondence and communications were coming from BOA to help them keep their loan current "through more affordable payments."

48.     The "Borrower Response Package" is false and deceptive in that it was really used by WLCB and BOA to collect a debt and/or obtain information concerning Plaintiff and the member of the Classes, while using BOA's logos and insignia, which were familiar to Plaintiff and created a false impression that Plaintiff and the members of the Classes were receiving a mailing from BOA in its capacity as service provider, rather than being contacted by BOA and WLCB as debt collectors.

49.     It is believed and, therefore, averred that the "Borrower Response Package" was created, drafted, printed, and put together for the purpose of concealing BOA's and WLCB's true purpose - pursuing an invalid debt and/or deceiving Plaintiff and the members of the Classes into

changing their loan terms and status to the benefit of BOA.

50.    The information contained in the "Borrower Response Package" was false and/or misleading; namely, *inter alia*:

    a.    Plaintiff never missed two mortgage payments (consecutive or otherwise) with respect to her mortgage;

    b.    Plaintiff's home was never in jeopardy or subject to a foreclosure;

    c.    Defendants could not have instituted foreclosure proceedings against Plaintiff;

    d.    Defendants could not have reported adverse or negative information about Plaintiff to credit reporting agencies;

    e.    The package both asserts that it is directed to the recipient in an attempt to collect a debt, and also that its purpose is to obtain a more affordable payment for the recipient; and

    f.    The package lists both BOA and WLCB as debt collectors and lists contact information for WLCB which is in reality an address for BOA.

51.    Defendants knew or should have known that the information contained in the "Borrower Response Packages" was false and misleading.

52.    Section 1692d of the FDCPA provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.

53.    The FDCPA further explains that Section 1692d is violated, *inter alia*, when a debt collector:

    a.    Uses obscene or profane language or language the natural consequence of

which is to abuse the hearer or reader, 15 U.S.C. § 1692d(2);

b.     Causes a telephone to ring or engages any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number, 15 U.S.C. § 1692d(5); and

c.     Places telephone calls without meaningful disclosure of the caller's identity, 15 U.S.C. § 1692d(6).

54.    Additionally, Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

55.    The FDCPA further explains that Section 1692e is violated, *inter alia*, when a debt collector:

a.     Creates a false impression of the character, amount, or legal status of any debt, 15 U.S.C. § 1692e(2);

b.     Represents or implies that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action, 15 U.S.C. § 1692e(4);

c.     Threatens to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5);

d.     Falsely represents or implies that the consumer committed any crime or other conduct in order to disgrace the consumer, 15 U.S.C. § 1692e(7);

e.     Communicates (or threatens to communicate) to any person credit

information which is known or which should be known to be false, 15 U.S.C. § 1692e(8);

f.    Uses any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10); and

g.    Uses any business, company, or organization name other than the true name of the debt collector's business, company, or organization, 15 U.S.C. § 1692e(14).

56.    Additionally, Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.

57.    Section 1692g requires that a consumer receive a so-called "validation notice" of the debt, within five days of the initial communication, that clearly details consumer's rights with respect to the alleged debt.

58.    In the present case, the requisite "validation notice" was unclear, misleading, and confusing, because it was overshadowed by the following:

a.    The "validation notice" was on the last page of a package that contained approximately twenty double-sided pages;

b.    The "validation notice" was on the last page of a package and was not identified in any way, shape, or form (e.g., by title, section, or page number); and

c.    The "validation notice" stated two diametrically-opposite purposes for the package at issue – collection of a debt by Defendants or Plaintiff's potential eligibility for a "loan assistance program."

59.    Importantly, nowhere in the packet or within the validation notice did Defendants specify the amount of the debt, as required by 15 U.S.C. § 1692g(a)(1).  Indeed the package baldly states that "[W]e have not received your last two regularly scheduled payments and are concerned that you may be having difficulty making your mortgage payment."

60.    Defendants violated the above-referenced provisions of the FDCPA by engaging in the conduct described above.

61.    By violating the FDCPA, Defendants committed *per se* violations of the FCEUA and the UTPCPL.

62.    Defendants acted in a false, deceptive, misleading, and unfair manner, by using unfair or unconscionable means to collect or attempt to collect the debt at issue.

63.    Defendants knew or should have known that their actions violated the FDCPA, the FCEUA, and the UTPCPL.

64.    Defendants could have taken the steps necessary to bring their agents' actions into compliance with the FDCPA, the FCEUA, and the UTPCPL, but Defendants neglected to do so and failed to adequately review those actions to insure compliance with the law.

65.    Defendants' conduct, as alleged herein, is (and was) deliberate, intentional, reckless, willful, and wanton.

66.    Defendants' conduct, as alleged herein, is (and was) unfair, misleading, deceptive, and unconscionable.

67.    Plaintiff and the members of the Classes have been (and will continue to be) financially damaged due to Defendants' conduct, as set forth herein.

68.    Plaintiff and the members of the Classes have suffered and will continue to suffer actual damages due to Defendants' conduct, as set forth herein.

69.     Plaintiff avers that Defendants' conduct, as described herein, was not limited to the circumstances described herein, but was, and is, habitual, systematic, ongoing, and unrelenting in Defendants' business model and practice.

70.     Plaintiff avers that the purpose of Defendants' behavior described herein (as well as their day-to-day business operation), is to deceive unsuspecting consumers, wherever and whenever possible, to achieve, *inter alia*, the objectives of obtaining additional revenue and profit for Defendants' business enterprise.

71.     Plaintiff avers that Defendants have utilized various methods calculated to confuse, mislead, distract, coerce, and convert consumers' funds for Defendants' sole benefit, by employing unethical business practices to secure pure financial gain and unjust financial enrichment.

72.     Plaintiff further states that Defendants' practices continue unabated, and will continue well beyond the end of this case, for which Defendants have and/or will reap hundreds of thousands of dollars in unearned ill-gotten gains from unsuspecting consumers.

## CLASS ACTION ALLEGATIONS

73.     Plaintiff brings this action on behalf of herself and two classes of similarly-situated individuals pursuant to Fed.R.Civ.P. 23.

74.     Plaintiff brings this action as a nationwide class action for Defendants' violations of the FDCPA on behalf of the following class of individuals:  All natural persons in the United States who received a Borrower Response Package in the form represented by Exhibit A (the "FDCPA Class") during the statutory period covered by this Complaint.

75.     Plaintiff further brings this action as a Pennsylvania state class action for Defendants' violations of the FCEUA and the UTPCPL on behalf of the following class of

individuals: All natural persons in the state of Pennsylvania who received a Borrower Response Package in the form represented by Exhibit A (the "PA Class") during the statutory period covered by this Complaint.

76.     The FDCPA Class and the PA Class are collectively referred to as the "Classes."

77.     The number of individuals in each of the Classes is so numerous that joinder of all members is impracticable.  The exact number of members of the Classes can be determined by reviewing Defendants' records.  Plaintiff is informed and believes and thereon alleges that there are over a hundred individuals in each defined Class.

78.     Plaintiff will fairly and adequately protect the interests of the Classes, and has retained counsel that is experienced and competent in class action and employment litigation. Plaintiff has no interests that are contrary to, or in conflict with, members of the Classes.

79.     A class action suit, such as the instant one, is superior to other available means for fair and efficient adjudication of this lawsuit.  The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

80.     A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, members of the Classes likely will not obtain redress of their injuries, and Defendant will retain the proceeds of their violations of the FDCPA, FCEUA and the UTPCPL.

81.     Furthermore, even if any member of the Classes could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.  Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual

members of the Classes and provide for judicial consistency.

82.     There is a well-defined community of interest in the questions of law and fact affecting the Classes as a whole.  The questions of law and fact common to each of the Classes predominate over any questions affecting solely individual members of the action.  Among the common questions of law and fact are:

a.     Whether Defendants are debt collectors, as that term is defined under the FDCPA;

b.     Whether Defendants' Borrower Response Package is a "communication" as that term is defined under the FDCPA;

c.     Whether Defendants' Borrower Response Package is an attempt to collect a debt;

d.     Whether Defendants' Borrower Response Package violated the FDCPA and FCEUA; and

e.     Whether Plaintiff and the members of the Classes have sustained damages and, if so, the proper measure of damages.

83.     Plaintiff's claims are typical of the claims of members of the Classes.  Plaintiff and members of the Classes have sustained damages arising out the same wrongful and uniform practices of Defendants.

84.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance.

**COUNT I**
**FDCPA**

85.     Plaintiff hereby incorporates all facts and allegations of this document by reference, as if fully set forth at length herein.

16

86.     Defendants are "debt collectors" as that term is defined under the FDCPA.

87.     As described herein, the actions of the Defendants violate the applicable provisions of the FDCPA.

88.     Defendants' violations with respect to the Borrower Response Package, include but are not limited to, the following:

a.      Using false, deceptive and misleading representations or means in connection with the collection of a debt in violation of 15 U.S.C. § 1692e;

b.      Making false threats to take any action that cannot legally be taken or that is not intended not to be taken in violation of 15 U.S.C. §1692e(5);

c.      Using false representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. §1692e(10); and

d.      Failing to properly disclose the amount due in violation of 15 U.S.C. §1692g(a)(1).

89.     As result of Defendants' violations of the FDCPA, Plaintiff and the members of the FDCPA Class have suffered damages in an amount to be determined at trial.

**COUNT II**
**FCEUA**

90.     Plaintiff hereby incorporates all facts and allegations of this document by reference, as if fully set forth at length herein.

91.     Section 2270.4 of the FCEUA states that "[i]t shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the" FDCPA.  73 P.S. § 2270.4(a).

92.     Section 2270.4 of the FCEUA also states as follows:

With respect to debt collection activities of creditors in this Commonwealth, it shall constitute an unfair or deceptive debt collection act or practice under this act if a creditor violates any of the following provisions:

\* \* \*

(4)     A creditor may not engage in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph:

\* \* \*

(ii)     The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

\* \* \*

(v)     Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number.

\* \* \*

(5)     A creditor may not use any false, deceptive or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph:

\* \* \*

(ii)     The false representation of the character, amount or legal status of any debt.

\* \* \*

(iv)     The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, attachment or sale of any property of any person unless such action is lawful and the creditor intends to take such action.

(v)     The threat to take any action that cannot legally be taken or that is not intended to be taken.

* * *

(vii)    The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(viii)   Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a debt is disputed.

* * *

(x)     The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(6)     A creditor may not use unfair or unconscionable means to collect or attempt to collect any debt.

73 P.S. § 2270.4(b)(4)-(6).

93.     As described herein, the actions of the Defendants violated the applicable provisions of the FCEUA independently and, collaterally, as a statutory violation of the FDCPA. 73 P.S. § 2270.4(a).

## COUNT III
## UTPCPL

94.     Plaintiff hereby incorporates all facts and allegations of this document by reference, as if fully set forth at length herein.

95.     Plaintiff and Defendants are "persons," as defined by Section 201-2(2) of the UTPCPL.

96.     The UTPCPL declares unlawful and prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . directly or

indirectly affecting the people of this Commonwealth." 73 Pa.C.S. §§ 201-2(3), 201-3.

97. Section 201-2(4) of the UTPCPL defines "unfair or deceptive acts or practices" to include the following conduct:

> (xvii). Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

98. In addition, a violation of the FCEUA is deemed a separate and independent statutory violation of the UTPCPL. 73 P.S. § 2270.5(a).

99. Section 201-9.2(a) of the UTPCPL authorizes a private cause of action for any person "who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by [the UTPCPL]."

100. As described herein, Defendants are engaged in a "trade or commerce . . . directly or indirectly affecting the people of this Commonwealth." 73 Pa.C.S. §§ 201-2(3), 201-3.

101. As described herein, Defendants' conduct falls within the aforementioned definitions of "unfair or deceptive acts or practices." 73 Pa.C.S. § 201-2(4).

102. As described herein, Defendants' conduct was "unfair."

103. As described herein, Defendants' conduct was "deceptive."

104. As described herein, Defendants' conduct creates and/or causes "a likelihood of confusion or of misunderstanding."

105. As described herein, the actions of the Defendants violate the applicable provisions of the FCEUA.

106. Plaintiff avers that Defendants violated the applicable provisions of the FCEUA and, therefore, violated the relevant provisions of the UTPCPL.

107. Pursuant to the UTPCPL, Plaintiff is entitled to actual and statutory damages.

108. Moreover, UTPCPL authorizes the Court, in its discretion, to award up to three (3) times the actual damages sustained for violations of the UTPCPL, as well as reasonable attorneys' fees.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for:

(a)     A Declaration that Defendant has violated the applicable provisions of the FDCPA, FCEUA and UTPCPL;

(b)     An Order designating this action as a class action pursuant to Federal Rule of Civil Procedure 23;

(c)     An Order appointing Plaintiff and her counsel to represent the Classes;

(d)     An Order enjoining Defendant from any further violations of the FDCPA, FCEUA and UTPCPL;

(e)     Actual damages;

(f)     Statutory damages;

(g)     Treble damages;

(h)     Attorneys' fees and costs; and

(i)     Such other relief as the Honorable Court shall deem just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

**(SIGNATURE ON THE NEXT PAGE)**

Respectfully submitted,
**KALIKHMAN & RAYZ, LLC**

Eric Rayz, Esquire
E-mail:  erayz@kalraylaw.com
Julie Robinson, Esquire
E-mail:  jrobinson@kalraylaw.com
Attorney(s) for Plaintiff(s)
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Phone: (215) 364-5030
Fax: (215) 364-5029

FARUQI & FARUQI, LLP
Gerald D. Wells, III, Esquire
Email:  jwells@faruqilaw.com
Robert J. Gray, Esquire
Email:  rgray@faruqilaw.com
101 Greenwood Ave.
Suite 600
Jenkintown, PA 19046
Telephone:  (215) 277-5770
Facsimile:  (215) 277-5771

Date: <u>November 21, 2012</u>